ESTATE OF ANITA MCCORMICK BLAINE, DECEASED, ANNE BLAINE HARRISON AND RICHARD BENTLEY, EXECUTORS, PETITIONERS,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 38849, 38850, 47425.    Filed September 20, 1954.

*Jackson L. Boughner, Esq.*, for the petitioners.
*Robert R. Veach, Esq.*, for the respondent.

---

[1] Anita McCormick Blaine died on February 19, 1954.  On March 4, 1954, an order was entered substituting the executors of her will as petitioners in her place and the caption was accordingly changed.

1196

1200

1204

1206

**OPINION.**

Raum, *Judge:* The question before us is not whether the Foundation for World Government is exempt from income taxes. The Commissioner has already ruled that the Foundation is exempt under section 101 (8) of the Internal Revenue Code of 1939,[4] which deals with organizations, among others, "not organized for profit but operated exclusively for the promotion of social welfare * * *." The questions before us are (1) whether the transfers made by Mrs. Blaine to the Foundation are deductible from her gross income under section

---

[4] SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.

the following organizations shall be exempt from taxation under this chapter—

    \*        \*        \*        \*        \*        \*        \*

(8) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes;

23 (o) (2),[5] and (2) whether such transfers are deductible for gift tax purposes under section 1004 (a) (2) (B).[6] Sections 23 (o) (2) and 1004 (a) (2) (B) are not correlated with section 101 (8), and, if they are applicable, it must be for some reason other than the applicability of section 101 (8).

Section 23 (o) provides generally for income tax deductions of charitable and related contributions; section 1004 (a) (2) provides for gift tax deduction of charitable and similar gifts. The only provisions relied upon by petitioner here are common to both sections 23 (o) (2) and 1004 (a) (2) (B), and deal with gifts made to a foundation "* * * organized and operated exclusively for * * * educational purposes * * * no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation." The key word in these provisions for present purposes is "educational." To come within these provisions petitioner must establish that the Foundation was an "educational" institution within the meaning of the statute. Had the Commissioner ruled that the Foundation itself was exempt as an "educational" institution under section 101 (6),[7] it is doubtful whether this case would ever have

---

[5] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
*      *      *      *      *      *      *
(o) CHARITABLE AND OTHER CONTRIBUTIONS.—In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of:
*      *      *      *      *      *      *
(2) a corporation, trust, or community chest, fund, or foundation, created or organized in the United States or in any possession thereof or under the law of the United States or of any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *

[6] SEC. 1004. DEDUCTIONS.
*      *      *      *      *      *      *
In computing net gifts for the calendar year 1943 and subsequent calendar years, there shall be allowed as deductions:
(a) RESIDENTS.—In the case of a citizen or resident—
*      *      *      *      *      *      *
(2) CHARITABLE, ETC. GIFTS.—The amount of all gifts made during such year to or for the use of—
*      *      *      *      *      *      *
(B) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals; no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *

[7] SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS.
the following organizations shall be exempt from taxation under this chapter—
*      *      *      *      *      *      *
(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. * * *

arisen, for the language of section 101 (6) in this respect corresponds with the language of sections 23 (o) and 1004 (a) (2). However, the Commissioner refused to rule that the Foundation was exempt as an "educational" institution under section 101 (6); he ruled only that it was exempt under section 101 (8) as a "social welfare" organization. But there are no corresponding provisions in sections 23 (o) and 1004 (a) (2) dealing with "social welfare" organizations; no income tax deductions are provided for gifts to "social welfare" organizations, nor are such gifts declared to be deductible in the computation of the gift tax. To prevail here, petitioner must establish that the Foundation is an "educational" institution.

Congress has enacted detailed statutory provisions dealing with exempt organizations and the tax consequences to donors of gifts to such organizations. The question in any particular case is neither whether the organization is worthy, nor whether it is engaged in desirable activities, but it is whether the particular matter under review is covered by the specific statutory provision relating to it. Thus, in this case we are not concerned with whether the Foundation for World Government was "charitable" in a general sense or whether it was devoting its efforts towards a commendable objective; the sole question presented by the parties is whether it was organized and operated exclusively as an "educational" institution within the meaning of sections 23 (o) and 1004 (a) (2). If it cannot qualify as such an "educational" institution, then the gifts in question are not deductible under section 23 (o) or 1004 (a) (2).

It is to be noted that the applicable statutory provisions require that the Foundation in question be organized "and" operated for educational purposes. These are conjunctive conditions, and we must inquire whether the Foundation fulfills both of these requirements. The record before us is voluminous. We have in evidence a detailed account of the establishment of the Foundation and the history of its operations during the first few years of its life. And after a careful study of the entire record we are satisfied that the Foundation was neither "organized" nor "operated" exclusively for educational purposes.

Mrs. Blaine was the sole benefactor of the Foundation. It was she who established it, pursuant to an understanding with Stringfellow Barr to donate one million dollars. It was not contemplated that there would be other donors or that Mrs. Blaine herself would make any further contributions. It was an outgrowth of the Pocono Conference, which Mrs. Blaine had financed, and the evidence before us is clear that her interests went beyond any mere academic or educational studies in relation to world government. The trust instrument itself speaks of world government as a "goal" to be achieved and states that

"the imperative task for which the fund is established is to spread the movement for world unity as rapidly as possible." While it is true that there are other recitals in the instrument compatible with the establishment of an educational organization, we are satisfied that these represent merely a subordinate objective and that the dominant aim was to organize a foundation to assist in bringing about a world government as rapidly as possible. Indeed, the latter objective was regarded of such importance that article IV of the trust instrument directed the trustees "to utilize the fund as promptly as possible," and provided that "the fund shall be entirely liquidated and expended not later than December 31, 1958," with permission to the trustees to extend the period for 10 additional years.

Moreover, the activities of the Foundation, particularly during the first year of its life, fail to qualify it as having been operated exclusively for educational purposes. The early grants, which were substantial in amount, were largely to organizations or groups that were vigorously supporting the world government movement, and we cannot find that such grants were made for "educational" purposes. Subsequently, the trustees apparently concluded that such grants would not turn out to be as fruitful as had originally been hoped for, and they modified their policy by making grants for studies and similar projects, in view of their conclusion that further study was necessary in the field of world government and the problems relating to it. It is these grants that come closest to qualifying the Foundation as operating for educational purposes. However, we are satisfied that these grants were merely made as a means to the sought-after end of world government. And though they on the surface would seem to qualify as "educational," the ultimate aim of such work was the attainment of a political objective. Cf. *Slee* v. *Commissioner*, 42 F. 2d 184, 185 (C. A. 2).[8] But in any event, as already noted, these "study" grants were merely some of grants made by the Foundation, since it had already made large amounts available to groups that were actively advocating and seeking the establishment of world government. Furthermore, we have serious doubt whether a change in policy, such as was adopted by the trustees herein, could render deductible gifts to the Foundation which were made prior to such change. We find that

---

[8] In the *Slee* case, Judge Learned Hand, dealing with gifts to the American Birth Control League, stated (p. 185):

"It may indeed be for the best interests of any community voluntarily to control the procreation of children, but the question before us is whether the statute covers efforts to proselytize in that or other causes. Of the purposes it defines 'educational' comes the closest, and when people organize to secure the more general acceptance of beliefs which they think beneficial to the community at large, it is common enough to say that the public must be 'educated' to their views. In a sense that is indeed true, but it would be a perversion to stretch the meaning of the statute to such cases ; they are indistinguishable from societies to promote or defeat prohibition, to adhere to the League of Nations, to increase the Navy, or any other of the many causes in which ardent persons engage."

the Foundation was not organized and operated exclusively for educational purposes,[9] and we hold that the gifts made by Mrs. Blaine are not within the purview of sections 23 (o) (2) and 1004 (a) (2) (B).

*Decisions will be entered for the respondent.*

---

[9] The Government has urged further that the income tax deductions and gift tax exemption be denied because of the alleged "subversive" character of some of the recipients of the grants, which, it is argued, taints the Foundation itself in the circumstances of this case. Some evidence was received in this connection, over vigorous objection by petitioner. The conclusions that we reach herein in no way rest upon any such evidence.